70098. HUBBERT v. WILLIAMS.
70099. WILLIAMS v. HUBBERT & SIEGEL.
(333 SE2d 425)

BEASLEY, Judge.

Camden County filed a declaration of taking, seeking to condemn 19.917 acres, and named as defendant-condemnees the owners of the property as well as those who held security deeds. The declaration gave $325,000 as the fair market value of the property and that sum was deposited in court.

After the condemnees filed their answers or notices of appeal to the superior court, Williams filed an application for payment reciting that he was the holder of a note dated March 19, 1982, and two deeds of even date to secure debt to the property; that $192,719.17 was due and owing on the note covered by the deeds; and that this amount should be declared a lien on the deposit and payment should be made to him in that sum.

The application was heard and an order issued on March 22, 1984, with the consent of all the condemnees, disbursing the money deposited. Williams drew down the $192,719.17.

A few days later a CPA checking Williams' financial records discovered that the amount actually due on the note was much higher and that Williams had claimed approximately $29,000 less than was actually owed him. This led Williams on April 3 to file a motion to modify the draw down order, alleging that in the application for payment movant had miscalculated the outstanding balance due on the note; that the calculations were erroneous and as a result the consent order contained a mathematical clerical error. The motion sought correction of the order to recite the true amount of the outstanding balance, "$221,885.70."

On the same day, which was a new term of court (OCGA § 15-6-3 (7) (B)), Williams filed a cross-claim against Hubbert and Siegel, co-makers of the note, alleging it to be in default. Williams sought to recover the amount still owing, the $29,166.53 which had not been satisfied by the draw down order.

On April 19, Hubbert dismissed his appeal in the superior court contesting the sum that had been awarded, and Siegel dismissed his on May 7.

An evidentiary hearing on the motion and the cross-claim was held on May 10. The court granted the motion to modify the consent order as contended for by Williams and entered final judgment in compliance with OCGA § 9-11-54 (b), this being a partial final judgment. The court also granted Hubbert's oral motion to dismiss the cross-claim filed by Williams, for lack of venue over the person of Hubbert. Also, of its own motion, the court dismissed the cross-claim against Siegel for the same reason, although Siegel had not appeared at the hearing. The order was entered on June 6.

Hubbert, as an equitable title owner of the property, appeals from the judgment modifying the consent order and requiring him to pay to Williams his pro rata share of the $28,772.34 drawn down originally by Siegel and himself (Case no. 70098). Siegel also appealed, but his appeal was dismissed by the trial court as untimely filed. Williams, as noteholder and the legal title owner of the property due to the deeds to secure debt, appeals from the dismissal of his cross-claim (Case no. 70099).

## Case No. 70098

1. Hubbert argues that the trial court lacked the power to modify the order which was entered at the previous term of court, citing e.g., *Burns v. Fedco Mgt. Co.*, 168 Ga. App. 15 (308 SE2d 38) (1983); *Reid v. Strickland*, 115 Ga. App. 394, 395 (2) (154 SE2d 778) (1967).

In *Union &c. Co. v. Trust Co. Bank*, 143 Ga. App. 715, 716 (1) (240 SE2d 100) (1977) (reversed and vacated as to the second division of the opinion in *Trust Co. Bank v. Union &c. Co.*, 241 Ga. 343 (245 SE2d 297) (1978); reaffirmed as to the first division in *Union Circulation Co. v. Trust Co. Bank*, 146 Ga. App. 612 (1) (247 SE2d 197) (1978)), this court discussed at length the principles regarding the authority of the trial court to correct, amend, open or modify a judgment after the expiration of the term. The court observed: " 'The rule limiting the power of courts over their judgments to the term at which they were rendered applies only to final judgments. An interlocutory decree does not pass out of control of the court with the end of the term. Until the pronouncement of the judge has assumed the form of a final judgment by being entered or otherwise properly made

a matter of record, it is subject to modification, change or amendment even after the term in which it was made.' " Id. at 717.

Here the consent order to draw down funds was clearly interlocutory in nature pending entry of a final judgment. Thus the rule against amending or revoking a judgment after the expiration of the term in which it was entered had no application to this order. Until the rendition of the final judgment it remained within the control of the court. *Bradley v. Tattnall Bank*, 170 Ga. App. 821, 823 (1) (318 SE2d 657) (1984); *Cotton States Mut. Ins. Co. v. Neese*, 173 Ga. App. 62, 63 (1) (325 SE2d 431) (1984).

Both parties also focus on the application of OCGA § 9-11-60. Hubbert takes the position that the court granted equitable relief, apparently basing this on an assumed application of OCGA § 9-11-60 (e), and that it had no authority to do so because an adequate remedy at law existed, i.e., a suit on the note. Williams, on the other hand, speaks from a different vantage point. He takes the position that what had occurred was a clerical mistake and that the court was authorized to correct it pursuant to OCGA § 9-11-60 (g). But this Section 60 of the Civil Practice Act is totally irrelevant because we are not here dealing with a judgment but only with an interim order. Thus, our entering the fray by determining whether or not this was the type clerical mistake correctible under subsection (g)[1] would be wholly superfluous. So would an examination of the question of whether Williams' motion was a "complaint in equity" as contemplated by OCGA § 9-11-60 (e).

Whether to change the figures in the consent order which was still within the breast of the trial court was within its discretion. We find no abuse of that discretion. The evidence established without contradiction that the error occurred when payments made on the note were subtracted twice, thus giving unearned double credit. No harm was done to Hubbert and Siegel by the modification of the draw down order. They were just being required to surrender funds which had inadvertently been paid to them and which they had had the gratuitous use of for over two months by that time. They did not contest that this was the amount actually owed on the note. But great harm was being suffered by Williams, who had made the mathematical computation error, and who had discovered and acted on it promptly, for he was losing the lien rights he had in the property for the full satisfaction of the note's debt.

2. Appellee Williams' motion for damages for frivolous appeal in

---

[1] See *Cooley v. All The World*, 247 Ga. 459, 460 (2) (276 SE2d 615) (1981); *Clark v. Ingram*, 150 Ga. App. 127, 128 (3) (257 SE2d 33) (1979).

Case No. 70098, made pursuant to OCGA § 5-6-6, is after due consideration denied.

## Case No. 70099

3. The trial court dismissed the cross-claim by Williams on the ground that venue was improperly laid.

Here the original action was an in rem condemnation proceeding. OCGA § 32-3-4. The condemnees' interest in the property was all that was at stake. That proceeding was of an essentially different nature than the cross-claim which was an in personam action for the balance due upon the allegedly defaulted note. Our constitution provides that such suits be tried in the county where the maker or endorser resides. 1983 Constitution of Georgia, Art. 6, Sec. 2, Par. 5.

Hubbert orally moved for dismissal because he was not a resident of Camden County. Williams argues that this must be done in writing. Although that may be the case when the challenger is a defendant and would have to raise this defense in his answer or in a written motion, see OCGA § 9-11-12 (b), here Hubbert was a cross-defendant and no written pleading was required. OCGA § 9-11-12 (a). It was raised during a hearing, as authorized. OCGA § 9-11-7 (b) (1). Thus, the ground was not improperly raised. And since it was undisputed that Hubbert was a non-resident, and instead was a resident of Fulton County, the cross-claim on the note could not properly be pursued in Camden County. About that the trial court was correct. But it went too far by dismissing the cross-claim against Hubbert. The 1983 Constitution requires that the court "shall transfer to the appropriate court in the state any civil case in which it determines that jurisdiction or venue lies elsewhere." Art. 6, Sec. 1, Par. 8. The Supreme Court has promulgated Uniform Transfer Rules to provide an orderly process for the implementation of this mandate, which rules were effective April 1, 1984. See 251 Ga. 893-895 (1984). Consequently, as to Hubbert, the court erred in dismissing the cross-claim; all that would be authorized would be a transfer to a court of his residence.

The court erred with respect to Siegel for a different reason. Siegel made no motion to dismiss the cross-claim for lack of venue. He raised no objection to the trial in Camden County of the issues regarding the claim on the note. See *Allen v. Alston*, 141 Ga. App. 572, 573 (2) (234 SE2d 152) (1977); *Cotton v. Ruck*, 157 Ga. App. 824 (278 SE2d 693) (1981). Thus the court was not authorized to sua sponte dismiss the cross-claim against Siegel on this basis.[2]

---

[2] Siegel later filed a motion to set aside another part of the June 6 judgment, on other grounds. The court denied that motion, leaving extant its ruling which had dismissed the cross-claim against Siegel.

Of course, satisfaction of the debt by the application of the county's original deposit, in the form of payment by Siegel and Hubbert of the amounts erroneously awarded to them by the March consent draw down order, and later modified by the court's order of June 6 requiring such payment, should extinguish the cross-claim. Until then, however, it remains viable.

*Judgment affirmed in Case No. 70098. Judgment reversed in Case No. 70099. Deen, P. J., and Pope, J., concur.*

DECIDED JULY 10, 1985.

*Barry L. Katz, Robert B. Lipman,* for Hubbert.
*Stephen L. Berry,* for Williams.
*Alvin N. Siegel,* pro se.